UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOHN E. WARNER, Jr., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:16-CV-367-TLS |
| | ) |
| CHAUFFEURS, TEAMSTERS & | ) |
| HELPERS LOCAL UNION NO. 414, | ) |
| and SPEEDWAY REDIMIX, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendant Chauffeurs, Teamsters & Helpers Local Union No. 414's (the "Union") Motion to Dismiss or, alternatively, Stay Proceedings [ECF No. 11], filed on December 13, 2016. Plaintiffs John E. Warner, Jr., Rick Clay, Sam Early, Brian Goeglein, Mike Campbell, Brad Wilson, Ty Steury, and John Zimmerman (collectively "the Plaintiffs") filed a Complaint [ECF No. 1] on October 19, 2016. The Union moves to dismiss pursuant to Rule 12(b)(6), asserting that the Complaint fails to state a claim upon which relief can be granted. Alternatively, the Union moves to stay proceedings in this Court pursuant to *Colorado River* abstention. On January 13, 2017, the Plaintiffs filed their Response [ECF No. 24] to the Motion. The Union's Reply [ECF No. 25] was entered September 8, 2016. This matter is now ripe for the Court's review.

## BACKGROUND

The Union is the exclusive bargaining representative of Defendant Speedway Redimix Inc.'s ("Speedway") truck drivers who are employed in Fort Wayne, and a charter member of the International Brotherhood of Teamsters. (Compl. ¶¶ 8, 12, ECF No. 1.) The Union and

Speedway (collectively "the Defendants") entered into a Collective Bargaining Agreement ("CBA"), which governs the terms and conditions of the employment of the bargaining unit employees. (*Id.* ¶ 9.)

At the beginning of 2015, Speedway employed the Plaintiffs as truck drivers. (*Id.* ¶ 10.) The Plaintiffs were dues-paying members of the Union. (*Id.* ¶¶ 11, 13.) Contemporaneous with their initial employment, the Plaintiffs "signed a Checkoff Authorization and Assignment Card . . . , which authorized [Speedway] to withhold union dues from the Plaintiffs' paychecks and to pay those dues to the Union." (*Id.* ¶ 14.) Prior to March 2015, "the Plaintiffs noticed that they were losing overtime hours and jobs to the drivers of a separate company known as Speedway Construction Products, Inc. ("Construction Products"), which was being operated out of the same facility using the same dispatchers and hauling the same concrete to the same job sites." (*Id.* ¶ 15.) The Plaintiffs complained to the Union that the Construction Products' drivers were getting work that the Plaintiffs and other Union members should have performed, but the Union "stated that there was nothing it could do" and refused to take action. (*Id.* ¶¶ 16–17.)

In March 2015, the Plaintiffs were offered and accepted employment with Construction Products because of "higher pay and better benefits with apparently better job security." (*Id.* ¶¶ 18–20.) They resigned from Speedway with no intent to return as employees and also withdrew their membership with the Union, which "issued to each Plaintiff a withdrawal card." (*Id.* ¶¶ 21–22, 24.) After starting with Construction Products, the Plaintiffs "became members of the International Association of Machinists, District Lodge 90, Local Lodge No. 2569." (*Id.* ¶ 23.) In March, May, and July of 2015, "the Union filed a series of unfair labor practice charges against [Speedway] and Construction Products with the United States National Labor Relations

Board" ("NLRB") in which the Union alleged "that [Speedway] coerced the Plaintiffs into leaving the Union and [Speedway] to go work for Construction Products." (*Id.* ¶¶ 26–27.)[1]

Then, on October 1, 2015, "the Union, [Speedway], and Construction Products entered into a voluntary written Settlement Agreement, which required Construction Products to terminate the Plaintiffs' employment" and Speedway to rehire them, which they accordingly did. (*Id.* ¶¶ 29–30.) "Following October 1, 2015, Construction Products began hiring additional drivers off the street to replace the Plaintiffs. These new drivers joined the Machinists Union" and assumed the work that the Plaintiffs had been doing. (*Id.* ¶ 47.)

Upon returning to work for Speedway, none of the Plaintiffs "asked to rejoin the Union" or "signed new Authorization Cards authorizing" Speedway to withhold dues from their paychecks, but Speedway did withhold from their paychecks and the Union collected them as dues. (*Id.* ¶¶ 31–35.) Speedway "relie[d] upon the Authorization Cards . . . signed . . . in March of 2015." (*Id.* ¶ 36.) In February 2016, the Plaintiffs learned that the Union considered the "Plaintiffs to still be members of the Union," and so "submitted new letters of withdrawal" to the Union. (*Id.* ¶ 39.) Nevertheless, Speedway "continued to withhold money from the Plaintiffs' paychecks and to pay that money to the Union" for all Plaintiffs except Samuel Early and Bradley Wilson. (*Id.* ¶ 40.)

In April 20, 2016, the Plaintiffs (except for Early and Wilson) "filed a grievance under the CBA" with the Union in response to the withholdings, but the "Union refused to investigate the grievances or to represent the Plaintiffs" and Speedway denied their claims. (*Id.* ¶¶ 41–44.) Also that spring, "the Plaintiffs saw an advertisement by Construction Products seeking to hire

---

[1] The Plaintiffs claimed that the Union's NLRB charges "were frivolous" and "in bad faith in order to coerce Construction Products to terminate the Plaintiffs' employment and force the Plaintiffs to return to work for" Speedway. (Compl. ¶ 28.)

truck drivers," but, when the Plaintiffs submitted applications, "Construction Products informed the Plaintiffs that it could not hire them because the Union objected and would file more legal actions against Construction Products." (*Id.* ¶¶ 48–50.)

The Plaintiffs filed a two-count Complaint against the Defendants on October 19, 2016. Count I asserted a § 301 claim against Speedway for breach of the CBA. Count II asserted a breach of the duty of fair representation ("DFR") claim against the Union for four separate reasons: "refusing to represent the Plaintiff in their grievances" against Speedway; "accepting and retaining dues money withheld by [Speedway] from the Plaintiffs' paychecks" without a legal right; "failing to take action to prevent Construction Products . . . from recognizing a different union as a representative of the Drivers of Construction Products, to pay those drivers higher benefits and wages, and by allowing those drivers to take work which" the Plaintiffs would otherwise have been "entitled under the seniority provisions of the CBA"; and "interfering with the Plaintiffs' ability to obtain work within their profession" and "threatening bad faith and frivolous legal actions against Construction Products in order to induce Construction Products not to hire the Plaintiffs." (*Id.* ¶¶ 60–63.)

**STANDARD OF REVIEW**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true, views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995).

4

The Supreme Court has articulated the following standard regarding factual allegations that are required to survive dismissal:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks, ellipsis, citations, and footnote omitted). A complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Although the court must accept as true all well-pleaded facts and draw all permissible inferences in the plaintiff's favor, it need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly* at 555). Legal conclusions can provide a complaint's framework, but unless well-pleaded factual allegations move the claims from conceivable to plausible, they are insufficient to state a claim. *Id.* at 680. Determining whether a complaint states a plausible claim for relief requires a reviewing court to "draw on its judicial experience and common sense." *Id.* at 679. Plaintiffs can also plead themselves out of court if the allegations clearly establish all the elements of an affirmative defense, including the defense that the action was filed after the statute of limitations period expired. *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613–14 (7th Cir. 2014); *see also Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011) ("[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint

is subject to dismissal for failure to state a claim."); *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (citing exception to the rule that complaints do not have to anticipate affirmative defenses to survive a motion to dismiss where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations"); *Tregenza v. Great Am. Comm'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (noting that even though a plaintiff is not required to negate a statute of limitations affirmative defense in his complaint, "if he pleads facts that show that his suit is time-barred or otherwise without merit, he has pleaded himself out of court").

Rule 12(b) requires that a court treat a motion to dismiss as one for summary judgment under Rule 56 when "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(b). Despite the language of Rule 12(b), a court has the option to convert the motion to one for summary judgment and consider the documents, or to ignore the documents and confine its analysis to the motion to dismiss. *Id.* 12(d); *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Venture Ass'n Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Finally, a court may also take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment. *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (citing *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)); *see also Ennega v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (noting that the affirmative defense of the statute of limitations may sometimes "be resolved at the motion-to-dismiss stage based on the allegations in the complaint and a few undisputable facts within [a court's] judicial-notice power").

## ANALYSIS

This Court has jurisdiction over the Plaintiffs' Complaint pursuant to the National Labor Relations Act ("NLRA"), 29 U.S.C. § 185, as well as 28 U.S.C. §§ 1331(a) & 1337. The Union moves to dismiss the Complaint for failure to state a claim on the grounds that the six-month statute of limitations bars all of the Plaintiffs' duty of fair representation claims. The Plaintiffs dispute the Union's contention. Alternatively, the Union asks the Court to abstain from hearing the case.

"A union has broad authority as the exclusive bargaining agent for a class of employees." *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1175 (7th Cir. 1995). "To balance the power bestowed upon a union to exclusively represent all employees in employment disputes, a concomitant duty of fair representation is owed by the union to each of its members." *Nemsky v. ConocoPhillips Co.*, 574 F.3d 859, 865 (7th Cir. 2009) (internal quotation marks and brackets omitted). As the "exclusive bargaining representative for its members," a union "has a duty [to] 'fairly . . . represent' all of them, 'both in its collective bargaining with [an employer] and in its enforcement of the resulting collective bargaining agreement.'" *Rupcich v. United Food & Commercial Workers Int'l Union*, 833 F.3d 847, 853 (7th Cir. 2016) (quoting *Vaca v. Sipes*, 386 U.S. 171, 177 (1967)). A union breaches its duty to fairly represent a member where its conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190. The rule announced in *Vaca* "applies to all union activity, including contract negotiation." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see also Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013) (stating that the union's obligation to serve the interests of all without discriminating toward any, to exercise its discretion in good faith, and to avoid arbitrary conduct "exists through the negotiation of a collective-bargaining agreement and during administration of

the agreement"); *Schultz v. Owens-Illinois, Inc.*, 696 F.2d 505, 514 (7th Cir. 1982) (acknowledging that a duty of fair representation case may allege a breach in the negotiation of a collective bargaining agreement).

A.      **Applicable Statute of Limitations Period**

A complaint based upon a union's breach of the duty of fair representation is subject to a six-month statute of limitations. *DelCostello v. Teamsters*, 462 U.S. 151, 154–55 (1983) (adopting six-month statute of limitations period from 29 U.S.C. § 160(b)); *Christiansen v. APV Crepaco, Inc.*, 178 F.3d 910, 914 (7th Cir. 1999); *Lewis v. Local Union No. 100 of Laborers' Int'l Union*, 750 F.2d 1368, 1377 (7th Cir. 1984). Both parties agree that the six-month statute of limitations applies for all hybrid DFR claims. (Pls.' Resp. 6, ECF No. 24; Def.'s Mem. 6, ECF No. 18.) However, the Plaintiffs argue that their Complaint contains both a "hybrid" claim against the employer and a "straight" DFR claim against the Union, and that the latter claim is not subject to a six-month limitations period. (Pls.' Resp. 5.)

This argument is without merit. It is well-settled within the Seventh Circuit that all DFR claims, whether hybrid or not, are subject to the six-month statute of limitations period. *E.g.*, *Johnson v. Graphic Comm. Int'l Union*, 930 F.2d 1178, 1182–83 (7th Cir. 1991). The Plaintiffs rely upon *Bullock v. Dressel*, 435 F.3d 294 (3d Cir. 2006), a Third Circuit case which did not apply the six-month timeframe, to argue that the six-month limitations period does not apply in their case. "*Bullock,* of course, is not binding on this Court." *See Wilkinson v. SEIU Local 1199NW*, No. C06-469C, 2007 WL 43849, at \*6 (W.D. Wash. Jan. 4, 2007) (rejecting a similar argument). Moreover, the Court could find no indication that the Seventh Circuit has adopted *Bullock*'s reasoning, even when faced with a claim for breach of DFR that is not coupled with a

claim against the employer. Thus, the Court will apply the six-month statute of limitations set out in *Johnson* to all of the Plaintiff's DFR claims.

**B.      The DFR Claims**

The parties dispute whether the various breach of DFR claims that the Plaintiffs asserted against the Union are time-barred. A breach of DFR "cause of action accrues from the time a final decision on a plaintiff's grievance has been made or from the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Chapple v. Nat'l Starch & Chem. Co. & Oil*, 178 F.3d 501, 505 (7th Cir. 1999) (quoting *Richards v. Local 134, Int'l Bhd. of Elec. Workers*, 790 F.2d 633, 636 (7th Cir. 1986)). "[C]ontinued union inactivity after an initial failure to respond to a grievance request does not constitute a continuing violation of the duty of fair representation." *Christiansen*, 178 F.3d at 916 (quoting *Adams v. Budd Co.,* 846 F.2d 428, 431 (7th Cir. 1988)); *Metz v. Tootsie Roll Indus., Inc.*, 715 F.2d 299, 304 (7th Cir. 1983). "A grieved employee cannot rely on a union's lack of response to informal correspondence to toll the statute of limitations when he has failed to invoke the formal grievance procedures available to him under a collective bargaining agreement." *Cohen v. Flushing Hosp. & Med. Ctr.*, 68 F.3d 64, 68 (2d Cir. 1995) (citing *Sosbe v. Delco Elecs. Div. of Gen. Motors Corp.*, 830 F.2d 83, 87 (7th Cir. 1987)).

Here, the Plaintiffs' lawsuit was filed on October 19, 2016. Under the six-month statute of limitations, any cause of action must have accrued on or after April 19, 2016, otherwise it would be considered untimely. There are four alleged instances of breach, and at this stage, the Court is only concerned with determining whether these allegations plausibly state a claim for breach of DFR. Therefore, the Court confines its consideration to whether the face of the Complaint makes plain the suit's untimeliness, and excludes those documents attached in the

9

Union's Motion but unreferenced in the Complaint's allegations. *See Del Korth v. Supervalu, Inc.*, 46 F. App'x 846, 848 (7th Cir. 2016) (per curiam) ("[W]hen the record does not make it clear when the statute of limitations began to run, a 12(b)(6) dismissal is premature."); *766347 Ontario Ltd. v. Zurich Capital Mkts., Inc.*, 249 F. Supp. 2d 974, 988 (N.D. Ill. 2003) ("Defendants' statute of limitations argument is based primarily not on allegations from the First Amended Complaint but documents attached to a declaration by Defendants' counsel. These documents are not appropriately before the Court on this motion to dismiss.").

The first allegation is that the Union "refus[ed] to represent the Plaintiffs in their grievances against [Speedway] for the Article 5 violations and fail[ed] to investigate the grievances or follow the Grievance process." (Compl. ¶ 60.) The parties disagree on the basis for this cause of action. The Union argues that the Plaintiffs' basis for their grievance was that the Union accepted dues improperly withheld from their paychecks. The withholdings began in October 2015, when the Plaintiffs returned to work with Speedway as part of the Defendants' settlement agreement with the NLRB. As a first step, the Union argues that the Plaintiffs complained to the NLRB and state court that the Union was improperly withholding their dues and preventing their withdrawal.[2] Only after unfavorable dispositions in both forums did the Plaintiffs file a formal grievance with the Union, which was subsequently denied and necessitated this federal lawsuit. Accordingly, the Union argues that such a DFR claim accrued outside the six-month limitations period, as the Plaintiffs knew, or reasonably should have known, the Union's position at some point during those prior legal actions.

However, the Plaintiffs argue that the basis for their grievance was that the Union accepted dues improperly withheld from their paychecks and that both Defendants did so in

---

[2] The Complaint is devoid of any allegations that mention the NLRB and state court proceedings referenced in the Union's Motion to Dismiss.

violation of the CBA. The Plaintiffs suggest that they "could not have raised that allegation without first attempting to resolve the issue through the dispute and grievance procedure" in the CBA. (Resp. 7.) February 2016 is when the Plaintiffs allege that they learned that the Union still considered them to be members, when they realized that their dues were allegedly being withheld *in violation of the CBA*, and when they sought their withdrawal through the Union's dispute and grievance procedures. On April 20, 2016, the Plaintiffs "filed a grievance under the CBA," which the Union subsequently rejected. (Compl. ¶ 41.) Accordingly, the Plaintiffs argue that they did not have a cause of action until their April 20, 2016, grievances were denied. Furthermore, the Plaintiffs argue that "had [they] attempted to file a § 301 claim without first filing a grievance, the Union would now be arguing that the Plaintiffs' failed to exhaust contractual remedies." (Resp. 8.)

The second allegation is that the Union "accept[ed] and retain[ed] dues money withheld by [Speedway] from the Plaintiffs' paychecks when the Union knew that it had no legal right to retain the money." (Compl. ¶ 61.) As was discussed in the preceding paragraph, the Plaintiffs did not receive any rejection as to their formal grievance under the CBA regarding their dues withholdings until after April 20, 2016. However, the Union argues that the Plaintiffs' cause of action accrued at the latest in February 2016, when the Union moved to dismiss the Plaintiffs' state court lawsuit.[3] The third allegation is that the Union "fail[ed] to take action to prevent Construction Products . . . from recognizing a different union as a representative of the [d]rivers of Construction Products, to pay those drivers higher benefits and wages, and by allowing those drivers to take work" that the "Plaintiffs were entitled." (*Id.* ¶ 63.) The Plaintiffs argue that the

---

[3] The Union also argues that the Plaintiffs should have known well-before February 2016, because the money was being withheld from their paychecks as of October 2015, pursuant to the settlement agreement's enforcement, and it was the basis of their state court complaint filed in November 2015.

11

Union provided shifting explanations regarding the relationship between Speedway and Construction Products. They contend that the settlement agreement allows them the right to apply to work with Construction Products, but when the Plaintiffs so applied in April 2016 the Union told them they could not. The Union argues that this theory is expressly time-barred because of the following allegations: (1) in March 2015, the Plaintiffs noticed movement of work from Speedway to Construction Products with loss of overtime hours and jobs, complained to the Union, and the Union did nothing (*Id.* ¶¶ 15–17); and (2) in October 2015, Construction Products began hiring additional drivers off the street to replace the Plaintiffs (*Id.* ¶ 47). To the Union, these allegations show that the Plaintiffs knew or would have had reason to know of a breach by October 2015.

The Court does not find that these allegations reveal that the statute of limitations bars the Plaintiffs' breach of DFR claims. It may be the case that the Plaintiffs knew, or reasonably should have known, that their membership dues were improperly being withheld before April 20, 2016. On the other hand, it may not have been reasonable for the Plaintiffs to know that the Union was in breach of the CBA until their formal grievance with the Union was finally rejected after April 20, 2016. Additionally, the Plaintiffs might have known, or reasonably should have known, that the Union failed to challenge the single-employer relationship between Speedway and Construction Products based on the incidents of October 2015. Then again, the Plaintiffs did not formally seek employment with Construction Products after the settlement agreement was entered until April 2016, in which case it would not have been reasonable for them to know before then. Whether the Plaintiffs "knew, or reasonably should have known" that they had breach of DFR claims is a factually intensive endeavor, and thus is inappropriate in a motion to dismiss. *Metz*, 715 F.2d at 303–05; *see also FDIC v. Kime*, 12 F. Supp. 3d 1113, 1120 (S.D. Ind.

2014) (denying a motion to dismiss because "the FDIC was not required to overcome affirmative defenses in its Complaint" because the facts "of its equitable-estoppel response to the Defendants' statute of limitations defense" were not appropriately considered at that stage); *766347 Ontario Ltd.*, 249 F. Supp. 2d at 988 (denying motion to dismiss federal securities claim because "inquiry notice is often a question of fact"). The Union may move for summary judgment on such grounds, should it feel that it is warranted, but the Court cannot find that the Complaint is untimely based upon the allegations pled therein.

Separately, the fourth allegation in the Complaint is that the Union "interfer[ed] with the Plaintiffs' ability to obtain work within their profession" by "induc[ing] Construction Products not to hire" them. (Compl. ¶ 62.) The Plaintiffs argue that in April 2016, Construction Products was advertising driver positions to which they applied for but were denied "due to threats from the Union" and lies the Union made in prior complaints to the NLRB about its members' ability to work for Construction Products. (Resp. 11.) The Union argues that this is just a state law claim for tortious interference with prospective business relationship, which is preempted under the NLRA. The Court agrees that this is not a cognizable claim for breach of DFR. Irrespective of whether the Union interfered with the Plaintiffs' ability to work for Construction Products, such a claim does not complain of the Union's negotiations with Speedway to create their collective CBA. Nor does it complain of how the CBA is being enforced, as there are no provisions within the CBA governing such circumstances. Such a claim involves the Union's alleged tortious interference, which arises under state law. *See Comfax Corp. v. N. Am. Van Lines, Inc.*, 587 N.E.2d 118, 124–25 (Ind. Ct. App. 1992).[4] "[S]tate regulation is forbidden whether federal law arguably protects or arguably prohibits the conduct." *Ehredt Underground, Inc. v.*

---

[4] The Plaintiffs asserted a similar claim in state court and that judge similarly found that the NLRA preempted their tortious interference claim. (*See* State Ct. Order, ECF No. 18-3.)

*Commonwealth Edison Co.*, 90 F.2d 238, 242 (7th Cir. 1996); *see also Chi. Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 464 F.3d 651, 657 (7th Cir. 2006). Accordingly, the Court will dismiss this theory of liability, as the proper place to raise such a concern is with the NLRB, not in a legal suit through a DFR claim.

**C.      Colorado River Abstention**

In the alternative, the Union asks the Court to stay this litigation pending the resolution of the state court proceedings. A federal court's ability to abstain from a case that falls within its jurisdiction "'is the exception, not the rule,' and can be justified only in exceptional circumstances." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 496 (7th Cir. 2011) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992)). Further, *Colorado River* abstention is permitted in considerably fewer circumstances than the other theories of abstention. *Id.* at 498 (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)). Under the *Colorado River* doctrine, a federal court may stay or dismiss a suit before it when there is a concurrent state court case and exceptional circumstances exist that would promote "wise judicial administration." *Colo. River*, 424 U.S. at 817–18. A district court must make a two-part inquiry to determine whether *Colorado River* abstention should apply: (1) whether the concurrent state and federal actions are actually parallel; and (2) if so, whether "exceptional circumstances" justify abstention. *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014). Cases are parallel under *Colorado River* if there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Adkins*, 644 F.3d at 499. "A court should examine 'whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues,'" *id.* (quoting *Tyrer v. City of S. Beloit*, 456 F.3d 744, 752 (7th Cir. 2006)), and doubts should be resolved in favor of exercising jurisdiction, *id.*

Upon a review of the first factor, the Court finds that the two proceedings are not parallel. True, the state court proceeding involves the same Plaintiffs and the Union, arises from the same facts alleged in the Complaint, and raises similar factual issues. But there are different legal issues in this Complaint not present in the state court. In state court, the complaint alleged that the Union was in breach of the Indiana Right to Work Act, Ind. Code § 22-6-6-8, committed common law tortious interference and criminal conversion, and improperly collected dues to which it had no entitlement. But notably in this Court, there are breach of DFR claims alleged against the Union under the theories discussed in the preceding section, and they incorporate the Union's breach of the CBA in April 2016. Furthermore, the tortious interference claim was voluntarily dismissed from the state court complaint, and the other two claims were dismissed pursuant to the state court's determination that it lacked subject-matter jurisdiction over them. They are currently on appeal and there are multiple conceivable dispositions for the two claims. However, because the state court determined that it did not have jurisdiction over the claims, any disposition affirming such an appeal would lack preclusive effect. *See Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) ("[J]udgment on the merits precludes relitigation of any ground within the compass of the suit, while a jurisdictional dismissal precludes only the relitigation of the [jurisdictional] ground of that dismissal."). Thus, the Court has doubts that there is a "*substantial* likelihood that the state litigation will dispose of all" the federal claims presented and so resolves them in favor of continuing to exercise its jurisdiction. *Adkins*, 644 F.3d at 499 (emphasis added).[5]

---

[5] Not satisfying the first part of the *Adkins* test excuses the Court from analyzing the lengthy list of non-exhaustive factors used to determine whether "exceptional circumstances" are present. *Freed*, 756 F.3d at 1018 (stating that the court need not address the second part if the first part is not met).

## CONCLUSION

For the reasons stated above, the Defendant Chauffeurs, Teamsters & Helpers Local Union No. 414's Motion to Dismiss [ECF No. 11] is GRANTED IN PART and DENIED IN PART. The breach of DFR claim alleged in Paragraph 62 of the Complaint is DISMISSED.

SO ORDERED on March 16, 2017.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT